IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| United States of America, | ) | CR 08-01378-TUC-FRZ(JCG) |
| Plaintiff, | ) ) | **REPORT AND RECOMMENDATION RE: MOTION TO DISMISS FOR** |
| vs. | ) ) | **VINDICTIVE PROSECUTION** |
| Jose Martin Oropeza, | ) ) | |
| Defendant. | ) ) | |
| | ) | |

Pending before the Court is Defendant Jose Martin Oropeza's Motion to Dismiss for Vindictive Prosecution. (Doc. 34.) Defendant's Motion to Dismiss seeks dismissal of Counts One and Three of the Superceding Indictment filed on August 19, 2009. The government filed a Response on February 22, 2010 (Doc. 52) and Defendant filed a Reply on March 1, 2010. (Doc. 53.) Defendant's Motion was set for oral argument and heard on March 2, 2010. The matter was submitted following oral argument at the conclusion of the hearing and taken under advisement. Having now considered the matter, the Magistrate recommends that the District Court deny the Motion.

### Background

This case involves the straw purchase of nine firearms which the government alleges were turned over to a Mexican national who could not legitimately purchase guns in the United States. The government alleges that Oropeza purchased nine firearms from five different licensed firearms dealers between September 5, 2007 and October 11, 2007. The

Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) became aware of the situation when an official from the Republic of Mexico called the Tucson Field Office to request a trace of a weapon used in a murder in Hermosillo, Sonora, Mexico in late 2007. The trace of the weapon showed Oropeza was the purchaser.

During a recorded interview with ATF on December 17, 2007, Oropeza admitted that he had purchased about seven firearms for a childhood friend from Mexico named "Cristian," paying for each firearm with Cristian's money. Cristian would drive Oropeza to gun dealerships, give Oropeza cash for the purchases, and tell Oropeza which firearms to purchase. After leaving the dealership, Oropeza turned over the firearms to Cristian who he believed took the guns to Mexico. Oropeza confirmed that a photograph of the Mexican homicide suspect, Cristian Ignacio Chavez-Velarde, was his friend "Cristian."

On November 5, 2008, Oropeza was indicted on one count of false statement during purchase of a firearm. The indictment alleged that during the October 2, 2007 purchase of a Herstal pistol, Oropeza falsely represented that he was the "actual buyer of the firearm." (Doc. 8.) The parties engaged in plea negotiations after the indictment, while the ATF continued to investigate Oropeza's purchase of weapons.

On April 7, 2009, ATF agents became aware of a second firearm recovered at a crime scene in Mexico which was traced back to Defendant.[1] During the course of its investigation, the government determined that Oropeza had purchased at least nine firearms, rather than the seven Oropeza indicated during his December 2007 interview.

In the spring of 2009, Oropeza advised the government that he would proceed to trial.

On July 5, 2009, Defendant filed a Motion in Limine to preclude Defendant's uncorroborated statements. (Doc. 26.) Defendant argued that his statements alone were insufficient to establish his guilt and requested that the Court preclude the statements at trial unless the government first provided independently corroborated evidence that Defendant

---

[1] ATF agents had not inquired about this second gun during the December 17, 2007, interview, because the second gun had not been recovered at that time.

1 falsely filled out the purchase forms. On July 17, 2009, the government filed a response
2 indicating it would offer independent evidence to corroborate Defendant's statements. (Doc.
3 29.)[2]

4 Before filing its response to the Motion in Limine, the government moved, on July 6,
5 2009, for continuance of the July 14 trial date, stating that additional time was needed to
6 procure Mexican officials to testify regarding certified documents. (Doc. 27.) The request
7 was unopposed. *(Id.)*[3]

8 The parties continued to discuss potential resolution by plea during this time. The
9 government asserts, and Oropeza does not dispute, that during a final plea negotiations
10 meeting on August 14, 2009, the government advised defense counsel that if Oropeza did not
11 accept its plea offer, the government would proceed with trial preparations, which included
12 seeking a superseding indictment adding additional charges. Defense counsel also asserts that
13 government counsel told defense counsel that the uncorroborated statements issue had
14 motivated the government to supercede the indictment. (Reply, Doc. 53, p. 2, l. 27-28).

15 Ultimately, Oropeza rejected the government's plea offer and, on August 19, 2009,
16 the government obtained a Superceding Indictment. The Superceding Indictment added two
17 charges: Count I and Count III. Count I charges Oropeza with Conspiracy to Defraud, and
18 alleges that Oropeza conspired with others to purchase firearms by making fraudulent
19 statements. Count 2 lists as overt acts, Oropeza's purchase of seven firearms between
20 September 5, 2007 and October 11, 2007. Count 3 alleges an additional count of False
21 Statement During Purchase of a Firearm and relates to the September 11, 2007 purchase of
22 a firearm in Mesa, Arizona.

---

[2]The motion in limine is pending.

[3]Numerous requests for continuance of trial were requested by the parties and granted by the Court during the pendency of the case, for a variety of reasons, including Defendant's desire to further research a legal matter (Doc. 15), Defendant's desire to present certain legal issues (Docs. 17, 21), schedule conflicts (Docs. 19, 23), and the government's need for time to procure Mexican officials to testify at trial (Docs. 27, 35). All of the motions were unopposed.

On October 26, 2009, Defendant filed the Motion to Dismiss currently at issue. In his Motion, Defendant contends that the government filed its Superceding Indictment in retaliation for Oropeza's exercise of a procedural right, specifically his filing of the Motion in Limine. Defendant requests that the Court dismiss Counts 1 and 3 of the Superceding Indictment.

## Discussion

A prosecutor violates due process when additional charges are sought solely to punish a defendant for exercising a constitutional or statutory right. *See Bordenkircher v. Hayes,* 434 U.S. 357, 363 (1978).

Claims of vindictiveness are evaluated differently depending on when additional charges are added. *See United States v. Goodwin,* 457 U.S. 368, 380-81 (1982); *United States v. Gamez-Orduno,* 235 F.3d 453, 462 (9th Cir. 2000). The Supreme Court has held that there is generally no presumption of prosecutorial vindictiveness in the pretrial setting, particularly when plea negotiations are on-going. *Goodwin,* 457 U.S. 368, 377-79, 381-82 (threatening and then filing more severe charges as an outgrowth of plea negotiations does not violate due process). *Gamez-Orduno* 235 F.2d at 463 (*citing Bordenkircher*, 434 U.S. at 363-64). That is not to say that prosecutorial conduct aimed at punishing a defendant because he has exercised his legal rights does not ever violate due process in the pretrial setting; rather, in the context of pretrial plea negotiations, "vindictiveness will not be presumed simply from the fact that a more severe charge followed on, or even resulted from, a defendant's exercise of a right." *Gamez-Orduno*, 235 F.3d at 462 (internal citations omitted).

Oropeza may establish vindictiveness by producing direct evidence of the government's punitive motivation. *See United States v. Jenkins*, 504 F.3d 694, 699 (9th Cir. 2007). In the absence of such evidence, Oropeza is entitled to a presumption of vindictiveness if he establishes that the additional charges were filed because he exercised a constitutional, procedural or statutory right in circumstances that give rise to an appearance of vindictiveness. *Id.* "[T]he appearance of vindictiveness results only where, as a practical

matter, there is a realistic or reasonable likelihood of prosecutorial conduct that would not have occurred but for hostility or a punitive animus towards the defendant because he has exercised his specific legal rights." *United States v. Gallegos-Curiel*, 681 F.2d at 1164, 1169 (9th Cir. 1982).

Oropeza concedes that he has no evidence of actual vindictiveness (Reply, Doc. 53, p. 3, l. 9-10); moreover, there is no evidence of such in the record. Oropeza contends that the Court should find an appearance of vindictiveness because the additional charges followed Defendant's filing of his Motion in Limine. It is well established, however, that the government's filing of additional charges after a defendant files pretrial motions does not, without more, raise a presumption of vindictiveness. *See Gamez-Orduno*, 235 F.3d at 463 (vindictiveness cannot be presumed from fact that superseding indictment filed shortly after defendant filed motion to suppress); *United States v. Noushfar*, 78 F.3d 1442, 1446 (9th Cir. 1996) (same); *United States v. Austin,* 902 F.2d 743 (1990) (filing of twenty-five count superseding indictment adding eleven counts not vindictive even if in response to motion to dismiss eight counts of fourteen count indictment on legal grounds). The courts refuse to presume vindictiveness in such situations, reasoning: "[I]t is unrealistic to assume that a prosecutor's probable response to [pretrial] motions is to seek to penalize and to deter. The invocation of procedural rights is an integral part of the adversary process in which our criminal justice system operates." *Goodwin*, 457 U.S. at 381.[4]

Defendant asserts that the real reason for the superceding indictment was to remedy the evidentiary defects that he pointed out in his Motion in Limine. Prosecutorial vindictiveness is found where the additional charges are sought solely to punish the defendant for exercising his rights. If the government was motivated to seek the superceding

---

[4]Defendant asserts that the timing of the government's procurement of a superceding indictment also creates an appearance of vindictiveness because the additional charges arise out of the same nucleus of facts as the original charges. Although those charges may be related to Defendant's purchase of firearms for Cristian during the same time period, it is undisputed that the government did not learn that another weapon purchased by Defendant was found in Mexico in relation to a criminal act until after the original indictment was obtained.

- 5 -

1 indictment based on evidentiary issues, there is no prosecutorial vindictiveness. The government's efforts to cure perceived problems with the admission of evidence does not constitute a punitive animus.[5] *Gallegos-Curiel*, 681 F.2d at 1169 (a charging decision is not improper unless it results **solely** from exercise of a protected legal right). This is particularly true given that the additional charges did not increase the severity of the charge or the sentence. *U.S. v. Aespuro*, 938 F.Supp. 623, 617 (E.D.Cal. 1996), *citing United States v. Kinsey*, 994 F.2d 699, 701 (9th Cir. 1993). The "doctrine of vindictive prosecution does not apply when 'there has been no increase in the severity of the charge for the sentence imposed.'" *Id.*

For the foregoing reasons, the Magistrate recommends that the District Judge, after his independent review, DENY Defendant's Motion to Dismiss for Vindictive Prosecution. (Doc. 34.)

Pursuant to Federal Rule of Criminal Procedure 59(b)(2), the parties have fourteen (14) days to serve and file written objections to the Report and Recommendation. If objections are not timely filed, they may be deemed waived. The parties are advised that any objections should be filed with the following caption: CR 08-01378-TUC-FRZ.

DATED this 5th day of March, 2010.

_____
Jennifer C. Guerin
United States Magistrate Judge

---

[5] Defendant also argues that if he had not graciously given the government five weeks to address his Motion in Limine, the trial would have occurred the month before the government sought new charges against him. (Reply, Doc. 53, p. 5, l. 7-14). Defendant may be confusing two different motions. From the record, it does not appear that any extensions were given to the government regarding the Motion in Limine. The Motion was filed on July 5, 2009. The government timely filed its response on July 16, 2009. Defendant did, however, agree to extensions for the government to file its response to the Motion to Dismiss, the motion which is the subject of this report. (See Doc. 37).